**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased,<br><br>Plaintiff,<br>v.<br><br>WILL COUNTY SHERIFF'S OFFICE, WILL COUNTY ADULT DETENTION FACILITY, WELLPATH, LLC, CHARLI MORGAN, JOHN MAJCHER, NATHANIAL SHAUGHNESSY, CAROS GARCIA, CINDY SMITH, GIOVANNI CONTE, LARRY WAKEFIELD<br><br>Defendants. | ) | Case No. 23-cv-2531 |

**<u>THIRD AMENDED COMPLAINT AT LAW</u>**

Plaintiff, KATIE VAUGHAN Independent Administrator of the Estate of ROBERT VAUGHAN, by and through her attorneys, Dudley & Lake, LLC, for her Third Amended Complaint at Law, states as follows:

**<u>NATURE OF THE ACTION</u>**

1. This is a civil action brought pursuant to the 4th and 14th Amendments of the United States Constitution, seeking monetary, declaratory, and injunctive relief pursuant to 42 U.S.C. § 1983. To redress deprivations of Plaintiff's civil rights which were precipitated by unlawful acts of a failure to provide adequate and sufficient medical care, failure to provide reasonable conditions of confinement, failure to intervene, deliberate indifference to the plaintiff's rights, and violations of the plaintiff's right to due process, while Defendants were purporting to act under the color of State Law.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1367 as Federal Claims brought under 42 U.S.C. § 1983 and venue pursuant to 28 U.S.C. § 1391 (b) as a majority of the defendants reside in this district.

3. Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2), in the United States District Court for the Northern District of Illinois on information and belief, one or more of the defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

## PARTIES

4. Plaintiff, Katie Vaughan, is the Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, who was in the custody of the Will County Adult Detention Facility located at 95 South Chicago St., Joliet, Illinois 60436, at the time of his death.

5. Defendant, Will County Adult Detention Facility (ADF), was a local government entity located at 95 South Chicago St., Joliet, Illinois 60436. At all times relevant to the events at issue in this case, the defendant was acting under the color of law and as a governmental entity and is being sued in that capacity.

6. Defendant, Will County Sheriff's Office (WSCO), is located at 16911 West Laraway Road, Suite 101, Joliet, IL 60433. At all times relevant to the events at issue in this case, the defendant was acting under the color of law and as a local government entity when it operated, managed, supervised, and maintained the Will County Adult Detention Facility (ADF) located at 95 South Chicago St., Joliet, Illinois 60536.

7. Defendant, WCSO, employed correctional officers and staff as part of their operations at ADF.

8. Defendant, Correctional Officer JOHN MAJCHER is a Deputy at the Will County Adult Detention Facility. At all times relevant to the events at issue in this case, the defendant was acting under the color of law and within the scope of his employment with the WCSO and is being sued in an individual capacity.

9. Defendant, Correctional Officer NATHANIEL SHAUGHNESSY is a Deputy at the Will County Adult Detention Facility. At all times relevant to the events at issue in this case, the defendant was acting under the color of law and within the scope of his employment with the WCSO and is being sued in an individual capacity.

10. Defendant, Correctional Officer CARLOS GARCIA is a Deputy at the Will County Adult Detention Facility. At all times relevant to the events at issue in this case, the defendant was acting under the color of law and within the scope of his employment with the WCSO and is being sued in an individual capacity.

11. Defendant, Wellpath, LLC, ("Wellpath") is a foreign healthcare limited liability corporation, whose registered agent is located at 350 South Northwest Highway, #300, Park Ridge, IL 60068. At all times relevant to the events at issue in this case, the defendant provided health care professionals to work at jail and prisons throughout the country including the Will County Adult Correctional Facility. (ADF)

12. Defendant, CHARLI MORGAN was an apparent agent and/or employee of Wellpath. As part of her duties, defendant was an apparent agent/employee of the ADF and worked at the ADF as a licensed Practical Nurse.

13. Defendant, CHARLI MORGAN was an apparent agent and/or employee of the ADF.

14. Defendant, CINDY SMITH was an apparent agent and /or employee of Wellpath. As part of her duties, defendant was an apparent agent/employee of the ADF and worked at the ADF as a Nurse.

15. Defendant, CINDY SMITH was an apparent agent and/or employee of the ADF.

16. GIOVANNI CONTE (hereinafter OFFICER CONTE) was a police officer employed by the Village of Frankfort, Illinois. At all times relevant to the events at issue in this case, the defendant was acting under the color of law and within the scope of his employment with the Village of Frankfort and is being sued in an individual capacity.

17. LARRY WAKEFIELD (hereinafter OFFICER WAKEFIELD) was a police officer employed by the Village of Frankfort, Illinois. At all times relevant to the events at issue in this case, the defendant was acting under the color of law and within the scope of his employment with the Village of Frankfort and is being sued in an individual capacity.

18. The Village of Frankfort has a municipal jail with four holding cells located at 20602 Lincolnway Lane, Frankfort, Illinois.

## GENERAL ALLEGATIONS

### A. BACKGROUND

19. The defendants, WCSO, ADF, and Wellpath, work together with the Will County Department of Health to provide mental health evaluations to all pretrial detainees in the ADF. *An Important First Step for Will County ADF Inmates: Mental Health Evaluation*, Will County Health Department and Community Health Center (Dec. 5, 2019), https://willcountyhealth.org/an-important-first-step-for-will-county-adf-inmates-mental-health-evaluation/.

20. On and before March 13, 2022, the estates of two pretrial detainees filed lawsuits against the ADF and WCSO after the pretrial detainees committed suicide at the ADF. One of the detainees was in a holding cell and utilized a telephone/ telephone booth to commit suicide. The other detainee hung himself in cell by using a blanket. The cases were both filed in Will County Circuit Court, case numbers 2002 L 000334, 2002 L 000335.

21. On and before March 13, 2022, ADF and WCSO settled the lawsuits brought on behalf of the two detainees and knew that having telephones and telephone booths in the holding cells at the ADF was extremely dangerous and would allow suicidal pretrial detainees to utilize the telephone and telephone booths to commit suicide.

22. On and before March 13, 2022, ADF and WCSO knew that giving blankets to detainees who were suicidal was extremely dangerous and placed the detainee at a high risk to harm herself/himself.

23. On and before March 13, 2022, numerous pretrial detainees have attempted to commit suicide in the ADF.

24. On and before March 13, 2022, numerous pretrial detainees committed suicide in the ADF including but not limited to the two cases filed in 2002, and on June 19, 2019, when a male detainee hung himself with his bedsheet.

25. On and before March 13, 2022, a pretrial detainee had committed suicide in the intake holding cells at the ADF by utilizing the use of telephones and/or telephone booths that were located in the cells.

26. On and before March 13, 2022, a court order was entered that required the ADF to turn all the lights off in the cells at 10:00 pm and keep them off until 6:00 AM.

27. On and before March 13, 2022, ADF and WCSO placed video cameras in the holding cells at the ADF which allowed them to monitor the pretrial detainees.

28. On and before March 13, 2022, ADF and WCSO knew that turning off the lights in the holding cells at 10:00 PM would not allow the correctional officers to monitor and prevent pretrial detainees from self-harm.

## B. THE DEATH OF ROBERT VAUGHAN

29. On and before September 1, 2015, the deceased plaintiff, ROBERT VAUGHAN was employed as a police officer with the Cook County Sheriff's Office.

30. On September 1, 2015, the deceased plaintiff, ROBERT VAUGHAN, was examined by a licensed Clinical Psychologist and diagnosed with anxiety, severe depression, panic attacks, suicidal thoughts, and hopelessness due to Post Traumatic Stress Disorder. (PTSD)

31. On and before March 13, 2022, the deceased plaintiff was convicted of a felony and sentenced to six years in a penitentiary.

32. On and before March 13, 2022, the plaintiff lost his job as a police officer.

33. On or about January 2022, the plaintiff was released from prison and returned to his home located at 22520 Oakfield Drive, Frankfort, Illinois.

34. On and before March 13, 2022, the plaintiff's wife, KATIE VAUGHAN and his two minor children, Charlie and Vincent, lived at 22520 Oakfield Drive, Frankfort, Illinois.

35. On March 4, 2022, the Frankfort police responded to the 22520 Oakfield Drive in Frankfort, Illinois, requesting them to check on the deceased plaintiff because ROBERT VAUGHAN made statements that day that he may harm himself and that he had previously made suicidal threats.

36. On March 4, 2022, the Frankfort police responded to 22520 Oakfield Drive in Frankfort and spoke to the deceased plaintiff, ROBERT VAUGHAN.

37. On March 4, 2022, the Frankfort police did not arrest ROBERT VAUGHAN and did not take him for medical or mental health treatment

38. On March 13, 2022, the Frankfort Police Department responded to a call 22520 Oakfield Drive and arrested ROBERT VAUGHAN for domestic violence. The alleged victim of domestic violence was KATIE VAUGHAN.

39. On March 13, 2022, the deceased plaintiff, ROBERT VAUGHAN, denied that he physically attacked KATIE VAUGHAN.

40. On March 13, 2022, at approximately 8:30 PM, OFFICER CONTE and OFFICER WAKEFIELD arrested ROBERT VAUGHAN and noted “while speaking with Robert, I could smell the odor of alcoholic beverage emitting from his breath” and that “Robert was very emotional, hostile, and crying when speaking with Frankfort officers”.

41. On and before March 13, 2022, OFFICER WAKEFIELD was aware that ROBERT VAUGHAN and his partner at the Cook County Sheriff’s had been arrested for robbery in 2015 and that ROBERT VAUGHAN’s partner had killed himself in custody after the arrest.

42. On March 13, 2022, ROBERT VAUGHAN was taken into custody and transported to the Frankfort Police Department located at 20602 Lincolnway Lane, Frankfort, Illinois.

43. On March 13, 2022, while the deceased plaintiff, ROBERT VAUGHAN, was at the Frankfort Police Department sitting on a bench handcuffed he began panting heavily, his face turned bright red, and he passed out and fell to the floor.

44. On March 13, 2022, OFFICER WAKEFIELD asked ROBERT VAUGHAN if he suffered from PTSD because “he had seen the symptoms before” and ROBERT VAUGHAN informed him that he did suffer from PTSD.

45. On and before March 13, 2022, Frankfort Police officers were required to follow the Illinois Municipal Jail and Lock-up Standards. Ill. ADM. CODE Title 20 ¶ 720 et al.

46. On and before March 13, 2022, the Illinois Municipal Jail and Lock-up standards mandated that a detainee with a known history of a mental disorder or mental defects, or a detainee who shows evidence of such condition, shall be afforded proper supervision until transferred and the Chief of police shall immediately notify the appropriate authorities regarding the mental condition of the detainee so that the transfer may be effected. III. ADM. CODE- Title 20 ¶ 720.309 (c).

47. On March 13, 2022, OFFICER CONTE and OFFICER WAKEFIELD failed to notify their superior officer, including the Chief of the Frankfort Police Department, that ROBERT VAUGHAN suffered from a mental condition and that the “event” he had at the police department may be related to the mental condition

48. On March 13, 2022, at 9:54 PM OFFICER CONTE and OFFICER WAKEFIELD called the Mokena Fire District to render aid and treatment to ROBERT VAUGHAN at the Frankfort Police Department.

49. On March 13, 2022, at approximately 10:00 PM the paramedics from the Mokena Fire District arrived at the Frankfort Police Department.

50. On March 13, 2022, OFFICER CONTE and OFFICER WAKEFIELD failed to inform the paramedics from the Mokena fire Department that ROBERT VAUGHAN suffered from PTSD and only told the paramedics that ROBERT VAUGHAN had hyperventilated.

51. On March 13, 2022, the deceased plaintiff, ROBERT VAUGHAN, refused medical treatment from the paramedics and refused to go to the hospital.

52. On March 13, 2022, OFFICER CONTE and OFFICER WAKEFIELD were required to complete an arrest and booking form and they knew the completed form would be given to the intake staff at the ADF.

53. On March 13, 2022, the arrest and booking form had a box identified as "Special Cautions" (Health, Officer Safety, Other).

54. On March 13, 2022, OFFICER CONTE and OFFICER WAKEFIELD wrote in the Special Caution box "ex. police officer."

55. On March 13, 2022, the deceased plaintiff, ROBERT VAUGHAN was transported to the ADF by OFFICER CONTE and arrived at the facility at 10:42 PM. ROBERT VAUGHAN was accepted by Correctional Officer T. Harrison Star #1837, and Officer Harrison signed the arrest and booking form and kept a copy of the form to process ROBERT VAUGHAN.

56. On March 13, 2022, at approximately 10:50 PM, the Plaintiff was present in the booking/intake department of the ADF.

57. When the plaintiff arrived at the ADF he was not wearing shoes and had stepped in feces.

58. On March 13, 2022, the staff at the ADF was undergoing a shift change at 11 PM.

59. On March 13, 2022, the defendant, NATHANIEL SHAUGHNESSY, was a Correctional Officer assigned to work the master controls at the ADF and his duties included to video monitor cell number BK9 to make sure pretrial detainees would not inflict self-harm.

60. On March 13, 2022, the defendant, NATHANIEL SHAUGHNESSY, was a Correctional Officer assigned to work at the ADF and his duties included screening and accepting

detainees from the local police department, reviewing paperwork, and processing the detainees into the ADF to ensure the detainee would not inflict self-harm.

61. On March 13, 2022, the defendant, CARLOS GARCIA, was a Correctional Officer assigned to work the master controls at the ADF and his duties included to video monitor cell number BK9 to make sure pretrial detainees would not inflict self-harm.

62. On March 13, 2022, the defendant CARLOS GARCIA, was a Correctional Officer assigned to work at the ADF and his duties included screening and accepting detainees from the local police department, reviewing paperwork, and processing the detainees into the ADF to ensure the detainee would not inflict self-harm.

63. On March 13, 2022, the defendant JOHN MAJCHER, was a Correctional officer assigned to work at the ADF and his duties included performing cell checks, monitoring the detainees, ensuring they received medical care, and preventing detainees from inflicting self-harm.

64. On March 13, 2022, the defendant JOHN MAJCHER, was a Correctional Officer assigned to work at the ADF and his duties included screening and accepting detainees from the local police department, reviewing paperwork, and processing the detainees into the ADF to ensure the detainee would not inflict self-harm.

65. On March 13, 2022, OFFICER CONTE communicated and informed the staff at the ADF, including but not limited to, SHAUGHNESSY, MAJCHER, and GARCIA that ROBERT VAUGHAN had been drinking that night, that at the police station ROBERT VAUGHAN started panting, his face turned bright red, and he passed out and that he told the officers he suffered from PTSD.

66. On March 13, 2022, OFFICER CONTE communicated and informed the staff at the ADF, including but not limited to, SHAUGHNESSY, MAJCHER, and GARCIA that the

paramedics were called to treat ROBERT VAUGHAN at the police station and that he refused medical care, and refused to go to the hospital.

67. On March 13, 2022, OFFICER CONTE failed to communicate and inform the staff at the ADF, including but not limited to, SHAUGHNESSY, MAJCHER, and GARCIA that ROBERT VAUGHAN had been drinking that night, that at the police station ROBERT VAUGHAN started panting, his face turned bright red, and he passed out and that he told the officers he suffered from PTSD.

68. On March 13, 2022, OFFICER CONTE failed to communicate and inform the staff at the ADF, including but not limited to, SHAUGHNESSY, MAJCHER, and GARCIA that the paramedics were called to treat ROBERT VAUGHAN at the police station, and he refused medical care, and refused to go to the hospital.

69. On and before March 13, 2022, the defendant, WELLPATH, LLC, provided medical professionals to perform medical intake assessments at the ADF, including but not limited to CHARLI MORGAN and CINDY SMITH.

70. On and before March 13, 2022, the WELLPATH, LLC had employees and/or agents who were required to screen pretrial detainees for complaints, treat ailments, arrange for hospitalization, identify any mental or emotional disturbances, or determine if a pretrial detainee was at risk of self-harm.

71. On March 13, 2022, the OFFICER CONTE communicated and informed the defendants SMITH and MORGAN, that ROBERT VAUGHAN had been drinking that night, that at the police station ROBERT VAUGHAN started panting, his face turned bright red, and he passed out and he told the arresting officers he suffered from PTSD.

72. On March 13, 2022, the OFFICER CONTE communicated and informed the defendants SMITH and MORGAN, that the paramedics were called to treat ROBERT VAUGHAN at the police station and that he refused medical care and refused to go to the hospital.

73. On March 13, 2022, the OFFICER CONTE failed to communicate and inform the defendants SMITH and MORGAN, that ROBERT VAUGHAN had been drinking that night, that at the police station ROBERT VAUGHAN started panting, his face turned bright red, and he passed out and told the officers he suffered from PTSD.

74. On March 13, 2022, the OFFICER CONTE failed to communicate and inform the defendants SMITH and MORGAN, that the paramedics were called to treat ROBERT VAUGHAN at the police station and that he refused medical care, and he refused to go to the hospital.

75. On March 13, 2022, the defendant, CHARLI MORGAN, was a licensed practical nurse assigned to work the intake unit at ADF and her shift ended at 11:00 PM.

76. On March 13, 2022, the defendant, CHARLI MORGAN failed to perform an intake assessment of ROBERT VAUGHAN, and/or failed to perform a complete intake assessment of ROBERT VAUGHAN before he was placed in cell number BK9.

77. On March 13, 2022, the defendant, CINDY SMITH was assigned to work intake at 11 PM and knew that ROBERT VAUGHAN had not received a medical and mental health assessment before being placed in cell # BK9.

78. On March 13, 2022, the defendant, CINDY SMITH never evaluated or examined ROBERT VAUGHAN.

79. On March 13, 2022, at 10:56 PM, ROBERT VAUGHAN was placed in cell BK9 in the ADF which had a telephone and/or a telephone booth in the cell. He was the only detainee in the cell.

80. On March 13, 2022, at 10:56 PM, ROBERT VAUGHAN was given a bedsheet to take with him into cell BK9. ROBERT VAUGHAN took the bed sheet with him into cell BK9.

81. The WCSO and ADF had a policy to do cell checks every 30 minutes.

82. When the deceased plaintiff, ROBERT VAUGHAN, was placed into Cell BK9, the lights were off in the cell.

83. On March 13, 2022, the defendant, JOHN MAJCHER, was the correctional officer responsible for performing cell checks on ROBERT VAUGHAN on the evening of March 13, 2022.

84. On March 13, 2022, at approximately 10:59 PM, Training Officer Gorniak looked into cell # BK9.

85. On March 13, 2022, at approximately 11:13 PM, Correctional Officer Majcher looked into cell number BK9 and it was difficult to see because the lights were out.

86. On March 13, 2022, at approximately 11:35 PM, Correctional Officer Majcher looked into the cell window at 11:35 PM and looked down at the floor of the cell and observed ROBERT VAUGHAN in a "squat" position with his back to the wall.

87. After looking into the cell, Officer Majcher left the area of cell BK9 to read the list of detainees in custody.

88. Officer Majcher read the list of detainees and recognized the name of ROBERT VAUGHAN as someone he had previously worked with and knew was a former police officer.

89. Officer Majcher informed a supervisor that ROBERT VAUGHAN was a former police officer.

90. On March 13, 2022, at approximately 11:44 PM Officer Majcher looked into the window of cell BK9.

91. On March 13, 2022, at approximately 11:48 PM Officer Majcher looked into the window of cell BK9 and walked away from the cell.

92. On March 13, 2022, at approximately 11:48 PM, Officer Majcher immediately returned to the cell and looked in the window and called for assistance.

93. On March 13, 2022, Officer Majcher opened the cell door to BK9 and observed ROBERT VAUGHAN hanging from the phone booth/box in his cell.

94. On March 13, 2022, ROBERT VAUGHAN used the bedsheet given to him to hang himself from the telephone booth/box in his cell.

95. Upon observing Plaintiff hanging, Correctional Officer Majcher called for assistance on his portable radio.

96. The Joliet Fire Department Paramedics arrived on scene to further provide Plaintiff with medical assistance.

97. At approximately 12:15 AM on March 14, 2022, the Joliet Fire Department transferred Plaintiff from the Will County Adult Detention Facility to AMITA Health St. Joseph's Medical Center.

98. Upon arrival at AMITA Health St. Joseph's Medical Center the Plaintiff was pronounced dead at 1:32 AM.

99. An autopsy was performed, and the cause of death was "hanging".

100. At all times herein mentioned, the defendants, and its employees were required to follow and abide by all of the internal policies and procedures at the ADF, all the State and Federal regulations, including but not limited to the Illinois County Jail Standards, and all Federal and State laws for county jails.

## Count 1 –NEGLIGENCE/ SURVIVAL ACT-MORGAN

1-100. Plaintiff hereby repeats, realleges, and reincorporates each and every allegation set forth in paragraphs 1 through 100.

101. On and before March 13, 2022, the defendant, CHARLI MORGAN, held herself out as a registered nurse and provided medical/mental health care to individuals at the ADF.

102. On and before March 13, 2022, the defendant, CHARLI MORGAN, had a duty to provide appropriate medical care within the standard of care to patients, including the plaintiff's decedent, ROBERT VAUGHAN.

103. On March 13, 2022, CHARLI MORGAN, was negligent in one or more of the following ways:

A. Failed to perform a medical and mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

B. Negligently performed a medical and mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

C. Negligently allowed ROBERT VAUGHAN to be placed in a cell without providing a proper medical and mental health assessment;

D. Negligently ended her shift without communicating and informing the nurse starting the next shift to perform an intake assessment on ROBERT VAUGHAN;

E. Negligently failed to complete an intake form for ROBERT VAUGHAN;

F. Negligently failed to place ROBERT VAUGHAN on suicide watch;

G. Failed to have ROBERT VAUGHAN undergo a complete medical and mental health assessment prior to being placed in a cell;

H. Deliberately and indifferently failed to provide ROBERT VAUGHAN with medical care;

I. Deliberately and indifferently ignored ROBERT VAUGHAN when she knew or reasonably should have known he was in need of immediate medical care.

104. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, CHARLI MORGAN, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

105. Pursuant to 735 ILCS 5/2/2-622, and attached to this complaint, is an affidavit of plaintiff's counsel and a report of the reviewing healthcare professional establishing that there is a reasonable and meritorious cause for filing this action.

Wherefore, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, CHARLI MORGAN, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 2 NEGLIGENCE/SURVIVAL ACT-WELLPATH**

1-105. Plaintiff repeats and realleges paragraphs 1-105 of Count I of this Complaint in full as paragraphs 1-105 of Count 2.

106. On and before March 13, 2022, the defendant, WELLPATH, by and through its agent/employee, CHARLI MORGAN, had a duty to provide appropriate medical care within the standard of care to patients, including the plaintiff's decedent, ROBERT VAUGHAN.

107. On March 13, 2022, WELLPATH, by and through its agent/employee, CHARLI MORGAN, was negligent in one or more of the following ways:

A. Failed to perform a medical and mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

B. Negligently performed a medical and mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

C. Negligently allowed ROBERT VAUGHAN to be placed in a cell without providing a proper medical and mental health assessment;

D. Negligently ended her shift without communicating and informing the nurse starting the next shift to perform an intake assessment on ROBERT VAUGHAN;

E. Negligently failed to complete an intake form for ROBERT VAUGHAN;

F. Negligently failed to place ROBERT VAUGHAN on suicide watch;

G. Failed to have ROBERT VAUGHAN undergo a complete medical and mental health assessment prior to being placed in a cell;

H. Deliberately and indifferently failed to provide ROBERT VAUGHAN with medical care;

I. Deliberately and indifferently ignored ROBERT VAUGHAN when she knew or reasonably should have known he was in need of immediate medical care.

108. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, WELLPATH, by and through its agent/employee, CHARLI MORGAN, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

109. Pursuant to 735 ILCS 5/2/2-622, and attached to this complaint, is an affidavit of plaintiff's counsel and a report of the reviewing healthcare professional establishing that there is a reasonable and meritorious cause for filing this action.

Wherefore, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WELLPATH, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 3 NEGLIGENCE/WRONGFUL DEATH-MORGAN**

1-109. Plaintiff repeats and realleges paragraphs 1-109 of Count II of this Complaint in full as paragraphs 1-109 of Count 3.

110. On March 13, 2022, CHARLI MORGAN, was negligent in one or more of the following ways:

A. Failed to perform a medical and mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

B. Negligently performed a medical and mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

C. Negligently allowed ROBERT VAUGHAN to be placed in a cell without providing a proper medical and mental health assessment;

D. Negligently ended her shift without communicating and informing the nurse starting the next shift to perform an intake assessment on ROBERT VAUGHAN;

E. Negligently failed to complete an intake form for ROBERT VAUGHAN;

F. Negligently failed to place ROBERT VAUGHAN on suicide watch;

G. Failed to have ROBERT VAUGHAN undergo a complete medical and mental health assessment prior to being placed in a cell;

H. Deliberately and indifferently failed to provide ROBERT VAUGHAN with medical care;

I. Deliberately and indifferently ignored ROBERT VAUGHAN when she knew or reasonably should have known he was in need of immediate medical care.

111. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of defendant, CHARLI MORGAN, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

112. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

113. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

114. That KATIE VAUGHAN, is the duly appointed Independent Administrator of the Estate of ROBERT VAUGHAN, deceased.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, CHARLI MORGAN, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

## COUNT 4 NEGLIGENCE/WRONGFUL DEATH-WELLPATH

1-114. Plaintiff repeats and realleges paragraphs 1-114 of Count 3 of this Complaint in full as paragraphs 1-114 of Count 4.

115. On March 13, 2022, WELLPATH, by and through its agent/employee, CHARLI MORGAN, was negligent in one or more of the following ways:

A. Failed to perform a medical and mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

B. Negligently performed a medical and mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

C. Negligently allowed Robert Vaughn to be placed in a cell without providing a proper medical and mental health assessment;

D. Negligently ended her shift without communicating and informing the nurse starting the next shift to perform an intake assessment on ROBERT VAUGHAN;

E. Negligently failed to complete an intake form for ROBERT VAUGHAN;

F. Negligently failed to place ROBERT VAUGHAN under suicide watch;

G. Failed to have ROBERT VAUGHAN undergo a complete medical and mental health assessment prior to being placed in a cell;

H. Deliberately and indifferently failed to provide ROBERT VAUGHAN with medical care;

I. Deliberately and indifferently ignored ROBERT VAUGHAN when she knew or reasonably should have known he was in need of immediate medical care.

116. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of defendant, WELLPATH, by and through its agent/employee, CHARLI MORGAN, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

117. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

118. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

119. That KATIE VAUGHAN, is the duly appointed Independent Administrator of the Estate of ROBERT VAUGHAN, deceased.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WELLPATH, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 5 NEGLIGENCE/SURVIVAL ACT- SMITH**

1-119. Plaintiff repeats and realleges paragraphs 1-103 of Count 4 of this Complaint in full as paragraphs 1-119 of Count 5.

120. On and before March 13, 2022, the defendant, CINDY SMITH, had a duty to provide appropriate medical care within the standard of care to patients, including the plaintiff's decedent, ROBERT VAUGHAN.

121. On March 13, 2022, CINDY SMITH, was negligent in one or more of the following ways:

A. Failed to perform a medical and mental health assessment of ROBERT VAUGHAN when she started her shift;

B. Negligently failed to learn at the start of her shift that a medical and mental health assessment had not been performed on ROBERT VAUGHAN prior to him being placed in his cell;

C. Negligently allowed Robert Vaughn to remain in a cell without providing a complete medical and mental health assessment;

D. Negligently failed to perform a mental health and medical intake assessment of ROBERT VAUGHAN;

E. Deliberately and indifferently failed to provide ROBERT VAUGHAN with medical care;

F. Deliberately and indifferently ignored ROBERT VAUGHAN when she knew or reasonably should have known he was in need of immediate medical care.

122. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, CINDY SMITH, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

123. Pursuant to 735 ILCS 5/2/2-622, and attached to this complaint, is an affidavit of plaintiff's counsel and a report of the reviewing healthcare professional establishing that there is a reasonable and meritorious cause for filing this action.

Wherefore, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, CINDY SMITH, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 6 NEGLIGENCE/SURVIVAL ACT-WELLPATH**

1-123. Plaintiff repeats and realleges paragraphs 1-107 of Count 5 of this Complaint in full as paragraphs 1-107 of Count 6.

124. On and before March 13, 2022, the defendant, WELLPATH, by and through its agent/employee, CINDY SMITH, had a duty to provide appropriate medical care within the standard of care to patients, including the plaintiff's decedent, ROBERT VAUGHAN.

125. On March 13, 2022, WELLPATH, by and through its agent/employee, CINDY SMITH, was negligent in one or more of the following ways:

A. Failed to perform a medical and mental health assessment of ROBERT VAUGHAN when she started her shift;

B. Negligently failed to learn at the start of her shift that a medical and mental health assessment had not been performed on ROBERT VAUGHAN prior to him being placed in his cell;

C. Negligently allowed Robert Vaughn to remain in a cell without providing a complete medical and mental health assessment;

D. Negligently failed to perform a mental health and medical intake assessment of ROBERT VAUGHAN;

E. Deliberately and indifferently failed to provide ROBERT VAUGHAN with medical care;

F. Deliberately and indifferently ignored ROBERT VAUGHAN when she knew or reasonably should have known he was in need of immediate medical care.

126. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, WELLPATH, by and through its agent/employee, CINDY SMITH, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

127. Pursuant to 735 ILCS 5/2/2-622, and attached to this complaint, is an affidavit of plaintiff's counsel and a report of the reviewing healthcare professional establishing that there is a reasonable and meritorious cause for filing this action.

Wherefore, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WELLPATH, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

## COUNT 7 NEGLIGENCE/WRONGFUL DEATH-SMITH

1-127. Plaintiff repeats and realleges paragraphs 1-127 of Count 6 of this Complaint in full as paragraphs 1-127 of Count 7.

128. On March 13, 2022, WELLPATH, by and through its agent/employee, CINDY SMITH, was negligent in one or more of the following ways:

A. Failed to perform a medical and mental health assessment of ROBERT VAUGHAN when she started her shift;

B. Negligently failed to learn at the start of her shift that a medical and mental health assessment had not been performed on ROBERT VAUGHAN prior to him being placed in his cell;

C. Negligently allowed Robert Vaughn to remain in a cell without providing a complete medical and mental health assessment;

D. Negligently failed to perform a mental health and medical intake assessment of ROBERT VAUGHAN;

E. Deliberately and indifferently failed to provide ROBERT VAUGHAN with medical care;

F. Deliberately and indifferently ignored ROBERT VAUGHAN when she knew or reasonably should have known he was in need of immediate medical care.

129. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of defendant, CINDY SMITH, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

130. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

131. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

132. That KATIE VAUGHAN, is the duly appointed Independent Administrator of the Estate of ROBERT VAUGHAN, deceased.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, CINDY SMITH, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 8 NEGLIGENCE/WRONGFUL DEATH-WELLPATH**

1-132. Plaintiff repeats and realleges paragraphs 1-132 of Count 7 of this Complaint in full as paragraphs 1-132 of Count 8.

133. On March 13, 2022, WELLPATH, by and through its agent/employee, CINDY SMITH, was negligent in one or more of the following ways:

A. Failed to perform a medical and mental health assessment of ROBERT VAUGHAN when she started her shift;

B. Negligently failed to learn at the start of her shift that a medical and mental health assessment had not been performed on ROBERT VAUGHAN prior to him being placed in his cell;

C. Negligently allowed Robert Vaughn to remain in a cell without providing a complete medical and mental health assessment;

D. Negligently failed to perform a mental health and medical intake assessment of ROBERT VAUGHAN;

E. Deliberately and indifferently failed to provide ROBERT VAUGHAN with medical care;

F. Deliberately and indifferently ignored ROBERT VAUGHAN when she knew or reasonably should have known he was in need of immediate medical care.

134. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of defendant, WELLPATH, by and through its agent/employee, CINDY SMITH, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

135. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

136. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

137. That KATIE VAUGHAN, is the duly appointed Independent Administrator of the Estate of ROBERT VAUGHAN, deceased.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WELLPATH, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 9-MORGAN /SMITH-INDIVIDUAL LIABILITY UNDER 42 § U.S.C. 1983**

1-137. Plaintiff repeats and realleges paragraphs 1-137 of Count 8 of this Complaint in full as paragraphs 1-137 of Count 9.

138. At all times herein mentioned, the Will County Sheriff's Office and the Will County Adult Detention Facility were governmental entities and a “person” within meaning of 42 U.S.C. § 1983.

139. At all times herein mentioned, The Will County Sheriff's Office and the Will County Adult Detention Facility acted through their elected officials, employees, servants, and agents.

140. This is an action for damages to address the individual and /or concerted conduct of the defendants which violated the plaintiff’s rights guaranteed under the 4th and 14th Amendments of the United States Constitution. This action is brought pursuant to section § 1983 and § 1988, as well as the 4th and 14th Amendments to the United States Constitution.

141. On and before March 13, 2022, The Will County Adult Detention Facility hired, WELLPATH, to perform the medical and mental health services for pretrial detainees at the ADF.

142. At all relevant times, WELLPATH, was contracted to perform a public function, that being the medical and mental health care at the ADF, and it is a "person" within the meaning of 42 U.S.C. § 1983.

143. At all relevant times, WELLPATH acted as an agent of ADF.

144. At all times relevant to this action, WCSO, has been responsible for the operation of the ADF, and the hiring, training, and supervision of its employees and supervision of detainees. As such, the WCSO is a policymaker of Will County for purpose of 42 U.S.C. § 1983 and is being sued in its official and individual capacity.

145. On and before March 13, 2022, the defendants, CHARLI MORGAN & CINDY SMITH, were nurses that were employed by the ADF and WELLPATH and provided medical and mental health treatment to pretrial detainees at the ADF and are "persons" within the meaning of 42 U.S.C. § 1983.

146. At all times relevant, the defendants, CHARLI MORGAN & CINDY SMITH, and each of them acted under the color of law while performing their duties for ADF and WELLPATH.

147. On and before March 13, 2022, the defendants, CHARLI MORGAN & CINDY SMITH, and each of them were required to follow internal policy and procedures and the Illinois County Jail standards for medical and mental health assessment for pretrial detainees during intake.

148. On and before March 13, 2022, ROBERT VAUGHAN possessed his rights guaranteed under the 4th and 14th Amendments of the United States Constitution to receive adequate treatment free from violations of Due Process rights, and cruel and unusual conduct while being detained at the ADF.

149. On March 13, 2022, ROBERT VAUGHAN was suicidal and in need of mental health and medical care and was at a substantial risk of harm.

150. On March 13, 2022, the defendant, CHARLI MORGAN, deliberately and intentionally and/or unreasonably:

A. Deliberately and intentionally and/or unreasonably did not perform a medical or mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

B. Deliberately and intentionally and/or unreasonably did not perform a complete medical and mental health assessment of ROBERT VAUGHAN prior to him being placed in a cell;

C. Deliberately and intentionally and/or unreasonably allowed ROBERT VAUGHAN to be placed in a cell without a proper medical and mental health assessment being performed;

D. Deliberately and intentionally and/or unreasonably ended her shift without communicating and informing the nurse starting the next shift that she did not evaluate and perform an intake assessment on ROBERT VAUGHAN;

E. Deliberately and intentionally and/or unreasonably did not perform an intake assessment and complete an intake form for ROBERT VAUGHAN;

F. Deliberately and intentionally and/or unreasonably did not place ROBERT VAUGHAN on suicide watch;

G. Deliberately and intentionally and/or unreasonably did not have ROBERT VAUGHAN undergo a complete medical and mental health assessment prior to being placed in a cell.

151. On March 13, 2022, the defendant, CINDY SMITH, deliberately and intentionally and/or unreasonably:

A. Deliberately and intentionally and/or unreasonably did not perform a medical and mental health assessment of ROBERT VAUGHAN when she started her shift;

B. Deliberately and intentionally and/or unreasonably did not inquire at the start of her shift whether a medical and mental health assessment had been performed on ROBERT VAUGHAN prior to being placed in his cell;

C. Deliberately and intentionally and/or unreasonably allowed ROBERT VAUGHN to remain in a cell without undergoing a proper medical and mental health assessment;

D. Deliberately and intentionally and/or unreasonably did not perform an intake examination of ROBERT VAUGHAN.

152. As described above, the conduct of the defendants, CHARLI MORGAN & CINDY SMITH, was intentional and/or objectively unreasonable and carried out with willful and deliberate indifference to the health and welfare of the plaintiff's decedent, ROBERT VAUGHAN, and their conduct was in violation of the 4th and 14th Amendments of the United States Constitution.

153. As a proximate result of the above-described violation of the plaintiff's decedents rights guaranteed under the 4th and 14th Amendments of the United States Constitution, ROBERT VAUGHAN committed suicide on March 13, 2022.

154. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, CHARLI MORGAN and CINDY SMITH, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

155. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

156. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendants, CHARLI MORGAN and CINDY SMITH, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 10 MAJCHER/SHAUGHNESSY/GARCIA**
**INDIVIDUAL LIABILITY UNDER U.S.C. §1983**

1-156. Plaintiff repeats and realleges paragraphs 1-156 of Count 9 of this Complaint in full as paragraphs 1-156 of Count 10.

157. On and before March 13, 2022, the defendants, MAJCHER, SHAUGHNESSY, & GARCIA, were correctional officers employed by WCSO and worked at the ADF to provide a safe and secure facility to detain pretrial detainees, provide security, cell checks, and to assist any pretrial detainee who needed medical and mental health treatment and are "persons" within the meaning of 42 U.S.C. § 1983.

158. At all times relevant, the defendants, MAJCHER, SHAUGHNESSY, & GARCIA, and each of them, acted under the color of law while performing their duties for ADF.

159. On and before March 13, 2022, the defendants, MAJCHER, SHAUGHNESSY, & GARCIA, and each of them were required to follow internal policy and procedure, guidelines, and the Illinois County Jail standards for pretrial detainees during intake.

160. On and before March 13, 2022, ROBERT VAUGHAN possessed his rights guaranteed under the 4th and 14th Amendments of the United States Constitution to receive adequate treatment free from violations of Due Process, and cruel and unusual conduct while being detained at the ADF.

161. On March 13, 2022, ROBERT VAUGHAN was suicidal and in need of mental and medical care and was at a substantial risk of harm.

162. On March 13, 2022, the defendant, SHAUGHNESSY, & GARCIA, deliberately and intentionally and/or unreasonably:

A. Deliberately and intentionally and/or unreasonably did not monitor the video surveillance cameras when ROBERT VAUGHAN was place in his cell when they knew the cell created a substantial risk of harm to the deceased plaintiff;

B. Deliberately and intentionally and/or unreasonably allowed ROBERT VAUGHAN to enter his cell with a bedsheet after they knew that ROBERT VAUGHAN had been placed in a holding cell that created a substantial risk that he would harm himself;

C. Deliberately and intentionally and/or unreasonably allowed ROBERT VAUGHAN to be placed in his cell with a bedsheet after they knew that ROBERT VAUGHAN had not received a complete medical and mental health assessment and was suicidal;

D. Deliberately and intentionally and/or unreasonably failed to monitor ROBERT VAUGHAN when he was in his cell and knew he could be suicidal;

E. Deliberately and intentionally and/or unreasonably did not intervene when ROBERT VAUGHAN was hanging himself in his cell;

F. Deliberately and intentionally and/or unreasonably allowed ROBERT VAUGHAN to be placed in a holding cell when they knew he could be suicidal, and the cell created a substantial risk he would harm himself.

G. Deliberately and intentionally and/or unreasonably allowed ROBERT VAUGHAN to remain in his cell without undergoing a proper medical and mental health assessment.

163. On March 13, 2022, the defendant, MAJCHER, deliberately and intentionally and/or unreasonably:

A. Deliberately and intentionally and/or unreasonably failed to perform appropriate cell checks on ROBERT VAUGHAN;

B. Deliberately and intentionally and/or unreasonably allowed ROBERT VAUGHAN to be placed in a cell with a bedsheet when he knew that ROBERT VAUGHAN had been placed in a holding cell that created a substantial risk that he would harm himself.

C. Deliberately and intentionally and/or unreasonably allowed ROBERT VAUGHN to remain in a cell without undergoing a proper medical and mental health assessment;

D. Deliberately and intentionally and/or unreasonably failed to intervene when ROBERT VAUGHAN was hanging himself in his cell;

E. Deliberately and intentionally and/or unreasonably ignored conduct from ROBERTVAUGHAN that indicated that he was in the process of hanging himself in his cell;

F. Deliberately and intentionally and/or unreasonably allowed ROBERT VAUGHAN to be placed in a holding cell when they knew he could be suicidal.

164. As described above, the conduct of the defendants, MAJCHER, SHAUGHNESSY, & GARCIA, was intentional and/or objectively unreasonably and carried out with willful and deliberate indifference to the health and welfare of the plaintiff's decedent, ROBERT VAUGHAN, and their conduct was in violation of the 4th and 14th Amendments of the United States Constitution.

165. As a proximate result of the above-described violation of the plaintiff's decedents rights guaranteed under the 4th and 14th Amendments of the United States Constitution, ROBERT VAUGHAN, committed suicide on March 13, 2022.

166. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, MAJCHER, SHAUGHNESSY, & GARCIA, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

167. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

168. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendants, MAJCHER, SHAUGHNESSY, & GARCIA, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 11 NEGLIGENCE/SURVIVAL ACT – WCSO VICARIOUS LIABILITY**

1-168. Plaintiff repeats and realleges paragraphs 1-168 of Count 10 of this Complaint in full as paragraphs 1-168 of Count 11.

169. On and before March 13, 2022, the defendant, WCSO, by and through its employees, MAJCHER, SHAUGHNESSY, & GARCIA had a duty to house the deceased plaintiff in a safe environment and provide appropriate medical and mental health care for pretrial detainees being processed into the ADF, including the plaintiff's decedent, ROBERT VAUGHAN.

170. On March 13, 2022, WCSO, by and through its agent and employees, SHAUGHNESSY & GARCIA, was negligent in one or more of the following ways:

A. Negligently failed to monitor ROBERT VAUGHAN's holding cell via the video camera placed in the cell when they knew or reasonably should have known that his holding cell created a substantial risk that the deceased plaintiff would harm himself;

B. Negligently allowed ROBERT VAUGHAN in a cell with a bedsheet after they knew, or should have known, that ROBERT VAUGHAN had not underwent a medical or mental assessment in violation of the Illinois County Jail standards;

C. Negligently allowed ROBERT VAUGHAN in a cell with a bedsheet after they knew, or reasonably should have known that ROBERT VAUGHAN, had not received a complete medical and mental health assessment in violation of the Illinois County Jail standards;

D. Negligently allowed ROBERT VAUGHAN to be placed into a holding cell when they knew or should have known he was suicidal, and the holding cell created a substantial risk he could harm himself;

E. Negligently failed to intervene when ROBERT VAUGHAN was hanging himself in his cell;

F. Negligently allowed ROBERT VAUGHAN to remain in his cell when they knew or reasonably should have known he was suicidal and needed to be removed from the cell;

G. Negligently failed to take reasonable actions to remove ROBERT VAUGHAN from the holding cell.

171. On March 13, 2022, WCSO, by and through its agent and employee, MAJCHER, was negligent in one or more of the following ways:

A. Negligently failed to monitor ROBERT VAUGHAN's cell and perform cell checks on ROBERT VAUGHAN in violation of the Illinois County Jail standards;

B. Negligently allowed ROBERT VAUGHAN in a cell with a bedsheet after he knew, or should have known, that ROBERT VAUGHAN had not underwent a medical or mental assessment in violation of the Illinois County Jail standards;

C. Negligently allowed ROBERT VAUGHAN in a cell with a bedsheet after he knew, or reasonably should have known, that ROBERT VAUGHAN, had not received a complete medical and mental health assessment in violation of the Illinois County Jail standards;

D. Negligently allowed ROBERT VAUGHAN to be placed into a holding cell when they knew or should have known he was suicidal, and the holding cell would create a substantial risk that the deceased plaintiff would injure himself;

E. Negligently failed to intervene when ROBERT VAUGHAN was hanging himself in his cell;

F. Negligently allowed ROBERT VAUGHAN to remain in his cell when he knew or reasonably should have known he was suicidal and needed to be removed from the cell;

G. Negligently failed to take reasonable actions to remove ROBERT VAUGHAN from the holding cell when he knew he was suicidal.

172. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of defendant, WCSO, by and through its agents and employees, MAJCHER, SHAUGHNESSY, & GARCIA, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

173. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, WCSO, by and through its agents, MAJCHER, SHAUGHNESSY, & GARCIA, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement,

medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WCSO, by and through its agents/employees, MAJCHER, SHAUGHNESSY, & GARCI, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 12 NEGLIGENCE/ WRONGFUL DEATH ACT- WCSO VICARIOUS LIABLITY**

1-173. Plaintiff repeats and realleges paragraphs 1-173 of Count 11 of this Complaint in full as paragraphs 1-173 of Count 12.

174. On and before March 13, 2022, the defendant, WCSO, by and through its employees, MAJCHER, SHAUGHNESSY, & GARCIA had a duty to house the deceased plaintiff in a safe environment and provide appropriate medical and mental health care for pretrial detainees being processed into the ADF, including the plaintiff's decedent, ROBERT VAUGHAN.

175. On March 13, 2022, WCSO, by and through its agent and employees, SHAUGHNESSY, & GARCIA were negligent in one or more of the following ways:

A. Negligently failed to monitor ROBERT VAUGHAN's holding cell via the video camera placed in the cell when they knew or reasonably should have known that his holding cell created a substantial risk that the deceased plaintiff would harm himself;

B. Negligently allowed ROBERT VAUGHAN in a cell with a bedsheet after they knew, or should have known, that ROBERT VAUGHAN had not underwent a medical or mental assessment in violation of the Illinois County Jail standards;

C. Negligently allowed ROBERT VAUGHAN in a cell with a bedsheet after they knew, or reasonably should have known that ROBERT VAUGHAN, had not received a complete medical and mental health assessment in violation of the Illinois County Jail standards;

D. Negligently allowed ROBERT VAUGHAN to be placed into a holding cell when they knew or should have known he was suicidal, and the holding cell created a substantial risk he could harm himself;

E. Negligently failed to intervene when ROBERT VAUGHAN was hanging himself in his cell;

F. Negligently allowed ROBERT VAUGHAN to remain in his cell when they knew or reasonably should have known he was suicidal and needed to be removed from the cell;

G. Negligently failed to take reasonable actions to remove ROBERT VAUGHAN from the holding cell.

176. On March 13, 2022, WCSO, by and through its agent and employee, MAJCHER, was negligent in one or more of the following ways:

A. Negligently failed to monitor ROBERT VAUGHAN's cell and perform cell checks on ROBERT VAUGHAN in violation of the Illinois County Jail standards;

B. Negligently allowed ROBERT VAUGHAN in a cell with a bedsheet after he knew, or should have known, that ROBERT VAUGHAN had not underwent a medical or mental assessment in violation of the Illinois County Jail standards;

C. Negligently allowed ROBERT VAUGHAN in a cell with a bedsheet after he knew, or reasonably should have known, that ROBERT VAUGHAN, had not received a complete medical and mental health assessment in violation of the Illinois County Jail standards;

D. Negligently allowed ROBERT VAUGHAN to be placed into a holding cell when they knew or should have known he was suicidal, and the holding cell would create a substantial risk that the deceased plaintiff would injure himself;

E. Negligently failed to intervene when ROBERT VAUGHAN was hanging himself in his cell;

F. Negligently allowed ROBERT VAUGHAN to remain in his cell when they knew or reasonably should have known he was suicidal and needed to be removed from the cell;

G. Negligently failed to take reasonable actions to remove ROBERT VAUGHAN from the holding cell when he knew he was suicidal.

177. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of defendant, WCSO, by and through its employees, MAJCHER, SHAUGHNESSY, & GARCIA, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

178. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

179. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

180. That KATIE VAUGHAN, is the duly appointed Independent Administrator of the Estate of ROBERT VAUGHAN, deceased.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WCSO, by and through its agents/employees, MAJCHER, SHAUGHNESSY, & GARCIA, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS*

## COUNT 13 WILLFUL & WANTON /SURVIVAL ACT- WCSO VICARIOUS LIABILITY

1-180. Plaintiff repeats and realleges paragraphs 1-180 of Count 12 of this Complaint in full as paragraphs 1-180 of Count 13.

181. On and before March 13, 2022, the defendant, WCSO, by and through its employees, MAJCHER, SHAUGHNESSY, & GARCIA had a duty to house the deceased plaintiff in a safe environment and provide appropriate medical and mental health care for pretrial detainees being processed into the ADF, including the plaintiff's decedent, ROBERT VAUGHAN.

182. On March 13, 2022, WCSO, by and through its agent and employees, SHAUGHNESSY, & GARCIA were negligent in one or more of the following ways:

A. Willfully and wantonly failed to provide ROBERT VAGUHAN with a safe place to be held when he was suicidal in violation of the Illinois County Jail standards;

B. Willfully and wantonly gave ROBERT VAUGHAN a bedsheet and placed him in a holding cell with a telephone booth when they knew there was a substantial risk that ROBERT VAUGHAN would injure or kill himself;

C. Willfully, wantonly, and consciously disregarded the lack of medical/mental health care received by ROBERT VAUGHAN;

D. Willfully and wantonly ignored the plaintiff's serious medical/mental health condition knowing it necessitated urgent care;

E. Willfully and wantonly denied the plaintiff mental health treatment;

F. Willfully and wantonly failed to stop the plaintiff from harming himself;

G. Willfully and wantonly allowed ROBERT VAUGHAN to have a bedsheet and be placed in a cell with a telephone booth when they knew he had not received a mental health or medical assessment in violation of the Illinois County Jail standards;

H. Willfully and wantonly failed to monitor ROBERT VAUGHAN's holding cell with the camera placed in his cell when they knew he was suicidal and placed him in a cell with a bedsheet and telephone booth;

I. Willfully and wantonly placed ROBERT VAUGHAN into a holding cell with a telephone booth and a bedsheet when they knew he was suicidal.

183. On March 13, 2022, WCSO, by and through its agent and employee, MAJCHER, was negligent in one or more of the following ways:

A. Willfully and wantonly failed to provide ROBERT VAUGHAN with a safe place to be held when he was suicidal in violation of the Illinois County Jail standards;

B. Willfully and wantonly allowed ROBERT VAUGHAN to have a bedsheet and be placed in a holding cell with a telephone booth when they knew there was a substantial risk that ROBERT VAUGHAN would injure or kill himself;

C. Willfully, wantonly, and consciously disregarded the lack of medical/mental health care received by ROBERT VAUGHAN;

D. Willfully and wantonly ignored the plaintiff's serious medical/mental health condition knowing it necessitated urgent medical care;

E. Willfully and wantonly denied the plaintiff mental health treatment;

F. Willfully and wantonly failed to stop the plaintiff from harming himself;

G. Willfully and wantonly allowed ROBERT VAUGHAN to be placed in a cell with a bedsheet when he knew that ROBERT VAUGHAN had not received a mental health and medical assessment in violation of the Illinois County Jail standards;

H. Willfully and wantonly placed ROBERT VAUGHAN into a holding cell with a telephone booth and a bedsheet when they knew he was suicidal.

184. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of defendant, WCSO, by and through its employees, MAJCHER, SHAUGHNESSY, & GARCIA, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

185. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, CARLOS GARCIA, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

Wherefore, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WCSO, by and through its agents/employees, MAJCHER, SHAUGHNESSY, & GARCIA, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 14 WILLFUL & WANTON /WRONGFUL DEATH – WCSO VICARIOUS LIABLITY**

1-185. Plaintiff repeats and realleges paragraphs 1-185 of Count 13 of this Complaint in full as paragraphs 1-185 of Count 14.

186. On and before March 13, 2022, the defendant, WCSO, by and through its employees, MAJCHER, SHAUGHNESSY, & GARCIA had a duty to house the deceased plaintiff in a safe environment and provide appropriate medical and mental health care for pretrial detainees being processed into the ADF, including the plaintiff's decedent, ROBERT VAUGHAN.

187. On March 13, 2022, WCSO, by and through its agent and employees, SHAUGHNESSY & GARCIA, was negligent in one or more of the following ways:

A. Willfully and wantonly failed to provide ROBERT VAGUHAN with a safe place to be held when he was suicidal in violation of the Illinois County Jail standards;

B. Willfully and wantonly gave ROBERT VAUGHAN a bedsheet and placed him in a holding cell with a telephone booth when they knew there was a substantial risk that ROBERT VAUGHAN would injure or kill himself;

C. Willfully, wantonly, and consciously disregarded the lack of medical/mental health care received by ROBERT VAUGHAN;

D. Willfully and wantonly ignored the plaintiff's serious medical/mental health condition knowing it necessitated urgent care;

E. Willfully and wantonly denied the plaintiff mental health treatment;

F. Willfully and wantonly failed to stop the plaintiff from harming himself;

G. Willfully and wantonly allowed ROBERT VAUGHAN to have a bedsheet and be placed in a cell with a telephone booth when they knew he had not received a mental health or medical assessment in violation of the Illinois County Jail standards;

H. Willfully and wantonly failed to monitor ROBERT VAUGHAN's holding cell with the camera placed in his cell when they knew he was suicidal and placed him in a cell with a bedsheet and telephone booth;

I. Willfully and wantonly placed ROBERT VAUGHAN into a holding cell with a telephone booth and a bedsheet when they knew he was suicidal.

188. On March 13, 2022, WCSO, by and through its agent and employee, MAJCHER, was negligent in one or more of the following ways:

A. Willfully and wantonly failed to provide ROBERT VAUGHAN with a safe place to be held when he was suicidal in violation of the Illinois County Jail standards;

B. Willfully and wantonly allowed ROBERT VAUGHAN to have a bedsheet and be placed in a holding cell with a telephone booth when they knew there was a substantial risk that ROBERT VAUGHAN would injure or kill himself;

C. Willfully, wantonly, and consciously disregarded the lack of medical/mental health care received by ROBERT VAUGHAN;

D. Willfully and wantonly ignored the plaintiff's serious medical/mental health condition knowing it necessitated urgent medical care;

E. Willfully and wantonly denied the plaintiff mental health treatment;

F. Willfully and wantonly failed to stop the plaintiff from harming himself;

G. Willfully and wantonly allowed ROBERT VAUGHAN to be placed in a cell with a bedsheet when he knew that ROBERT VAUGHAN had not received a mental health and medical assessment in violation of the Illinois County Jail standards;

H. Willfully and wantonly placed ROBERT VAUGHAN into a holding cell with a telephone booth and a bedsheet when they knew he was suicidal.

189. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of defendant, MAJCHER, SHAUGHNESSY, & GARCIA, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

190. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

191. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

192. That KATIE VAUGHAN, is the duly appointed Independent Administrator of the Estate of ROBERT VAUGHAN, deceased.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WCSO, by and through its agents/employees, MAJCHER, SHAUGHNESSY, & GARCIA, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 15 NEGLIGENCE/SUVIVAL ACT – WCSO**

1-192. Plaintiff repeats and realleges paragraphs 1-192 of Count 14 of this Complaint in full as paragraphs 1-192 of Count 15.

193. On and before March 13, 2022, the defendant, WCSO, had a duty to house the deceased plaintiff in a safe environment, and provide appropriate medical and mental health care for pretrial detainees being processed into the ADF, including the plaintiff's decedent, ROBERT VAUGHAN.

194. On March 13, 2022, WCSO, was negligent in one or more of the following ways:

A. Negligently failed to implement proper protocols and procedures for employees to process and screen pretrial detainees into the ADF;

B. Negligently failed to train the staff to process, screen, and evaluate pretrial detainees being admitted into the ADF;

C. Negligently allowed employees to ignore the needs of pretrial detainees during a shift change when they knew that staff would neglect their duties to the pretrial detainees during a shift change;

D. Negligently allowed ROBERT VAUGHAN to be housed at the ADF when they knew or reasonably should have known that the ADF was not safe place to detain a suicidal pretrial detainee in violation of the Illinois County Jail standards;

E. Negligently failed to improve the structural makeup of ADF to make it safe and secure place to house pretrial detainees who are suicidal after a previous inmate utilized a phone booth to kill himself;

F. Negligently failed to remove the phones/phone booths located in the intake cells when they knew that prior pretrial detainees had utilized the phones/phone booths to commit suicide;

G. Negligently failed to properly train the staff at the ADF to recognize and identify pretrial detainees who are at high risk for suicide;

H. Negligently failed to implement a new cell check protocol at the ADF after the ADF was ordered to turn the light off in the cells from 10 PM to 6 AM and the pretrial detainees could not be seen on the video surveillance in the cells;

I. Negligently allowed ROBERT VAUGHAN to have a bedsheet and to remain in a cell with a telephone booth and they knew there was substantial risk that he would harm himself;

J. Negligently allowed ROBERT VAUGHAN to remain in his cell when they know he was suicidal;

K. Negligently placed ROBERT VAUGHAN into a holding cell with a telephone booth and bedsheet when they there was a substantial risk ROBERT VAUGHAN would injure or kill himself.

195. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of defendant, WCSO, by and through its agents and employees, including but not limited to the defendants, MAJCHER, SHAUGHNESSY, & GARCIA, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

196. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, WCSO, by and through its agents, MAJCHER, SHAUGHNESSY, & GARCIA, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WCSO, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

## COUNT 16 NEGLIGENCE/ WRONGFUL DEATH ACT- WCSO

1-196. Plaintiff repeats and realleges paragraphs 1-196 of Count 15 of this Complaint in full as paragraphs 1-196 of Count 16.

197. On March 13, 2022, WCSO, was negligent in one or more of the following ways:

A. Negligently failed to implement proper protocols and procedures for employees to process and screen pretrial detainees into the ADF;

B. Negligently failed to train the staff to process, screen and evaluate pretrial detainees being admitted into the ADF;

C. Negligently allowed employees to ignore the needs of pretrial detainees during a shift change when they knew that staff would neglect their duties to the pretrial detainees during a shift change;

D. Negligently allowed ROBERT VAUGHAN to be housed at the ADF when they knew or reasonably should have known that the ADF was not safe place to detain a suicidal pretrial detainee in violation of the Illinois County Jail standards;

E. Negligently failed to improve the structural makeup of ADF to make it safe and secure place to house pretrial detainees who are suicidal after a previous inmate utilized a phone booth to kill himself;

F. Negligently failed to remove the phones/phone booths located in the intake cells when they knew that prior pretrial detainees had utilized the phones/phone booths to commit suicide;

G. Negligently failed to properly train the staff at the ADF to recognize and identify pretrial detainees who are at high risk for suicide;

H. Negligently failed to implement a new cell check protocol at the ADF after the ADF was ordered to turn the light off in the cells from 10 PM to 6 AM and the pretrial detainees could not be seen on the video surveillance in their cells;

I. Negligently allowed ROBERT VAUGHAN to have a bedsheet and to remain in a cell with a telephone booth and they knew there was substantial risk that he would harm himself;

J. Negligently allowed ROBERT VAUGHAN to remain in his cell when they know he was suicidal;

K. Negligently placed ROBERT VAUGHAN into a holding cell with a telephone booth and bedsheet when they there was a substantial risk ROBERT VAUGHAN would injure or kill himself.

198. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of defendant, WCSO, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

199. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

200. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

201. That KATIE VAUGHAN, is the duly appointed Independent Administrator of the Estate of ROBERT VAUGHAN, deceased.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WCSO, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 17 WILLFUL & WANTON /SURVIVAL ACT- WCSO**

1-201. Plaintiff repeats and realleges paragraphs 1-201 of Count 16 of this Complaint in full as paragraphs 1-201 of Count 17.

202. On and before March 13, 2022, the defendant, WCSO, had a duty not to engage in willful and wanton conduct and to provide pretrial detainees a safe environment and appropriate medical and mental health care for pretrial detainees being housed and processed into the ADF, including the plaintiff's decedent, ROBERT VAUGHAN.

203. On March 13, 2022, WCSO, was willful and wanton in one or more of the following ways:

A. Willfully, wantonly, and consciously disregarded the proper protocols and procedures for employees to process pretrial detainees into the ADF;

B. Willfully and wantonly failed to train the staff to process and evaluate pretrial detainees being admitted into the ADF;

C. Willfully and wantonly allowed employees to ignore the needs of pretrial detainees during a shift change when they knew that staff would neglect their duties to the pretrial detainees during a shift change;

D. Willfully and wantonly allowed ROBERT VAUGHAN to be housed at the ADF when they knew or reasonably should have known that the ADF was not safe place to detain a suicidal pretrial detainee in violation of the Illinois County Jail standards;

E. Willfully and wantonly ignored prior recommendations to improve the structural makeup of ADF to make it a safe and secure place to house pretrial detainees who are suicidal;

F. Willfully and wantonly failed to remove the phones/phone booths located in the intake cells when they knew that prior pretrial detainees had utilized the phones/phone booths to commit suicide;

G. Willfully and wantonly ignored recommendations to properly train the staff at the ADF to recognize and identify pretrial detainees who are at high risk for suicide;

H. Willfully, wantonly, and consciously disregarded the cell check protocol at the ADF after the ADF was ordered to turn the light off in the cells from

10 PM to 6 AM and the pretrial detainees could not be seen on the video surveillance in their cells;

I. Willfully and wantonly failed to provide safe conditions for plaintiff's pre-trial detention;

J. Willfully and wantonly allowed ROBERT VAUGHAN to remain in his cell when they know he was suicidal;

K. Willfully and wantonly placed ROBERT VAUGHAN into a holding cell with a telephone booth and bedsheet when they there was a substantial risk ROBERT VAUGHAN would injure or kill himself.

204. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of defendant, WCSO, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

205. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, WCSO, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WCSO, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 18 WILLFUL & WANTON /WRONGFUL DEATH – WCSO**

1-205. Plaintiff repeats and realleges paragraphs 1-205 of Count 17 of this Complaint in full as paragraphs 1-205 of Count 18.

206. On March 13, 2022, WCSO, was willful and wanton in one or more of the following ways:

A. Willfully and wantonly failed to implement proper protocols and procedures for employees to process pretrial detainees into the ADF;

B. Willfully and wantonly failed to train the staff to process and evaluate pretrial detainees being admitted into the ADF;

C. Willfully and wantonly allowed employees to ignore the needs of pretrial detainees during a shift change when they knew that staff would neglect their duties to the pretrial detainees during a shift change;

D. Willfully and wantonly allowed ROBERT VAUGHAN to be housed at the ADF when they knew or reasonably should have known that the ADF was not a safe place to detain a suicidal pretrial detainee in violation of the Illinois County Jail Standards;

E. Willfully and wantonly ignored prior recommendations to improve the structural makeup of ADF to make it a safe and secure place to house pretrial detainees who are suicidal;

F. Willfully and wantonly failed to remove the phones/phone booths located in the intake cells when they knew that prior pretrial detainees had utilized the phones/phone booths to commit suicide;

G. Willfully and wantonly ignored recommendations to properly train the staff at the ADF to recognize and identify pretrial detainees who are at high risk for suicide;

H. Willfully, wantonly, and consciously disregarded the cell check protocol at the ADF after the ADF was ordered to turn the light off in the cells from 10 PM to 6 AM and the pretrial detainees could not be seen on the video surveillance in their cells;

I. Willfully and wantonly failed to provide safe conditions for plaintiff's pre-trial detention;

J. Willfully and wantonly allowed ROBERT VAUGHAN to remain in his cell when they know he was suicidal;

K. Willfully and wantonly placed ROBERT VAUGHAN into a holding cell with a telephone booth and bedsheet when they there was a substantial risk ROBERT VAUGHAN would injure or kill himself.

207. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of defendant, MAJCHER, SHAUGHNESSY, & GARCIA, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

208. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

209. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

210. That KATIE VAUGHAN, is the duly appointed Independent Administrator of the Estate of ROBERT VAUGHAN, deceased.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WCSO, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 19 /MONELL §1983 – WCSO**

1-210. Plaintiff repeats and realleges paragraphs 1-210 of Count 18 of this Complaint in full as paragraphs 1-210 of Count 19.

211. The constitutional violations detailed above were caused in part by the custom, policy and practice of the defendants' as promulgated, and enforced, and disseminated by WCSO

whereby those charged with ensuring compliance with the Constitution of the United States, in this case, and in many others, instead, deliberately encourage denial of a safe place for pretrial detainees to be processed into the ADF and denial of medical and mental health treatment at the ADF.

212. On and before March 13, 2022, a pretrial detainee had committed suicide in the intake ADF holding cells by utilizing the use of telephones and/or telephone booths that were located in the cells.

213. Prior to March 13, 2022, at least two pretrial detainees committed suicide in their cells by hanging themselves with bedsheets that were given to them by the ADF staff.

214. On and before March 13, 2022, the ADF received a court order requiring the facility to turn off the lights in the cells from 10 PM to 6 AM.

215. On and before March 13, 2022, the WCSO and the staff at the ADF were required to abide to and follow the Illinois County Jail standards.

216. That after the two suicides that resulted in lawsuits in 2002, WCSO had a custom, practice and official policy not to improve the structural makeup of the holding cells and failed to train the staff on how to properly screen and monitor the detainees that were suicidal which would have allowed the ADF facility and staff to improve the safety, supervision, and training at the facility to protect and treat pretrial detainees who are suicidal.

217. The customs, policies and practices that were a proximate cause of the constitutional violations in this case include:

A. Failed to keep the inmates safe from self-harm by allowing the cells to be dark all night without implementing new procedures to keep the detainees safe;

B. Failed to train the ADF staff to perform proper cell checks at the ADF after knowing that that detainees who were suicidal were placed in holding cells and committed suicide;

C. Failed to improve the safety of the ADF by failing to remove telephones and telephone booths from the holding cells;

D. Provided inadequate training to screen pretrial detainees who are suicidal after several inmates had previously committed suicide in the facility;

E. Allowed detainees to take bedsheets into their holding cells when the detainees had not been properly screened during the intake process.

218. The WCSO's failure to train and supervise its employees working at the ADF condones, ratifies, and sanctions the failure to properly assess the pretrial detainees before being admitted into the ADF.

219. The WCSO's failure to remove the telephones and telephone booth from the holding cells condones, ratifies, and sanctions the deliberate conduct to protect pretrial detainees from committing suicide.

220. As a direct and proximate result of one or more of the foregoing deliberate acts and/or omissions of defendant, WCSO, plaintiff's decedent, ROBERT VAUGHAN, sustained injuries and subsequently died.

221. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

222. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including

but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

223. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, WCSO, plaintiff's decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

224. That KATIE VAUGHAN, is the duly appointed Independent Administrator of the Estate of ROBERT VAUGHAN, deceased.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendant, WCSO, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

**COUNT 20-OFFICER CONTE/OFFICER WAKEFIELD-INDIVIDUAL LIABILITY UNDER 42 § U.S.C. 1983**

1-224. Plaintiff repeats and realleges paragraphs 1-224 of Count 8 of this Complaint in full as paragraphs 1-224 of Count 20.

225. At all times herein mentioned, the Village of Frankford had a police department which was a governmental entity and a "person" within meaning of 42 U.S.C. § 1983.

226. At all times herein mentioned, the Frankfort Police Department acted through its elected officials, employees, servants, and agents.

227. This is an action for damages to address the individual and/or concerted conduct of the defendants, OFFICERS CONTE and OFFICER WAKEFIELD that violated the plaintiff's rights guaranteed under the 4th and 14th Amendments of the United States Constitution. This action is brought pursuant to section § 1983 and § 1988, as well as the 4th and 14th Amendments to the United States Constitution.

228. On and before March 13, 2022, the defendants, OFFICER CONTE and OFFICER WAKEFIELD were employed by the Village of Frankfort and were required to provide a safe and secure facility to detain and process pretrial detainees to be transferred to the county jail and assist any pretrial detainee who needed medical and mental health treatment and are "persons' within the meaning of 42 U.S.C § 1983.

229. At all times relevant, the defendants, OFFICER CONTE and OFFICER WAKEFIELD, and each of them, acted under the color of law while performing their duties for the Village of Frankfort.

230. On and before March 13, 2022, the defendants, OFFICER CONTE and OFFICER WAKEFIELD, and each of them were required to follow internal policy and procedures and the Illinois County Jail standards for medical and mental health assessment.

231. On and before March 13, 2022, ROBERT VAUGHAN possessed his rights guaranteed under the 4th and 14th Amendments of the United States Constitution to receive adequate treatment free from violations of Due Process rights, and cruel and unusual conduct while being detained at the Frankfort Police Department and the ADF

232. On March 13, 2022, ROBERT VAUGHAN was suicidal and in need of mental health and medical care and was at a substantial risk of harm.

233. On March 13, 2022, the defendant, OFFICER CONTE, deliberately and intentionally and/or unreasonably:

A. Deliberately and intentionally and/or unreasonably failed to inform his supervisor and/or the Chief of Police that ROBERT VAUGHAN suffered from PTSD in violation of the Illinois Municipal jail and Lock-up Standards;

B. Deliberately and intentionally and/or unreasonably did not inform the Mokena fire department personnel that ROBERT VAUGHAN suffered from PTSD;

C. Deliberately and intentionally and/or unreasonably failed to inform the Mokena fire department personnel that the 'event" that ROBERT VAUGHAN suffered at the Frankford police station was related to his PTSD;

D. Deliberately and intentionally and/or unreasonably failed to write in the arresting and booking form that ROBERT VAUGHAN:

- Suffered from PTSD
- That the event he experienced at the station was related to his PTSD
- That he Passed out at the Frankford police station which required the officers to call for paramedics to treat ROBERT VAUGHAN
- That ROBERT VAUGHAN refused medical care and refused to go to the hospital.

E. Deliberately and intentionally and/or unreasonably did not orally inform the intake personnel at the ADF that ROBERT VAUGHAN:

- That Robert Vaughan suffered from PTSD
- That the event he experienced at the station was related to his PTSD
- Passed out at the Frankford police station which required the officers to call for paramedics to treat ROBERT VAUGHAN
- That ROBERT VAUGHAN refused medical care and refused to go to the hospital.

234. On March 13, 2022, the defendant, OFFICER WAKEFIELD, deliberately and intentionally and/or unreasonably:

A. Deliberately and intentionally and/or unreasonably failed to inform his supervisor and/or the Chief of Police that ROBERT VAUGHAN suffered from PTSD in violation of the Illinois Municipal jail and Lock-up Standards;

B. Deliberately and intentionally and/or unreasonably did not inform the Mokena fire department personnel that ROBERT VAUGHAN suffered from PTSD;

C. Deliberately and intentionally and/or unreasonably failed to inform the Mokena fire department personnel that the ‘event” that ROBERT VAUGHAN suffered at the Frankford police station was related to his PTSD;

D. Deliberately and intentionally and/or unreasonably failed to write in the arresting and booking form that ROBERT VAUGHAN:

- Suffered from PTSD
- That the event he experienced at the station was related to his PTSD
- That he Passed out at the Frankford police station which required the officers to call for paramedics to treat ROBERT VAUGHAN
- That ROBERT VAUGHAN refused medical care and refused to go to the hospital.

235. As described above, the conduct of the defendants, OFFICER CONTE and OFFICER WAKEFIELD, was intentional and/or objectively unreasonable and carried out with willful and deliberate indifference to the health and welfare of the plaintiff’s decedent, ROBERT VAUGHAN, and their conduct was in violation of the 4th and 14th Amendments of the United States Constitution.

236. As a proximate result of the above-described violation of the plaintiff’s decedents rights guaranteed under the 4th and 14th Amendments of the United States Constitution, ROBERT VAUGHAN committed suicide on March 13, 2022.

237. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of defendant, OFFICER CONTE and OFFICER WAKEFIELD , plaintiff’s

decedent, ROBERT VAUGHAN, suffered injuries of a personal and pecuniary nature, including conscious pain and suffering, disability, disfigurement, medical and hospital expenses, and had he lived, he would have been entitled to bring this cause of action and this cause of action survives his death.

238. ROBERT VAUGHAN left surviving a spouse, KATIE VAUGHAN, and certain next of kin, Charlie Vaughan and Vincent Vaughan, for whose exclusive benefit this action is being brought pursuant to 740 ILCS 180/1 et seq., commonly known as the Illinois Wrongful Death Act.

239. That as a result of the death of plaintiff's decedent, ROBERT VAUGHAN, his spouse and next of kin, and each of them, have sustained substantial pecuniary injury including but not limited to the loss of money, benefits, goods, services, economic support, loss of society, love and companionship, and have further suffered grief and sorrow.

WHEREFORE, the plaintiff, KATIE VAUGHAN, Independent Administrator of the Estate of ROBERT VAUGHAN, deceased, prays for Judgment against defendants, GIOVANNI CONTE and LARRY WAKEFIELD, in an amount in excess of $50,000.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS*

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues raised in the Complaint.

*Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.*

Respectfully Submitted,

/s/ *Kevin J. Golden*
Attorney for Plaintiff

Dudley & Lake, LLC (29651)
Kevin J. Golden (6210825)
Alex Campos (6308699)
20 N. Clark Street ~ Suite 720
Chicago, Illinois 60602
P: 312-263-6300
F: 312-263-6356
kgolden@dudleylake.com
acampos@dudleylake.com